UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:24-cv-173-GCM

| | |
|---|---|
| VALCHIC WENDELL HENDON,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| FNU HAYES, et al., ) | **ORDER** |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on initial review of the pro se Complaint [Doc. 1]. The Plaintiff is proceeding in forma pauperis. [Doc. 5].

**I.     BACKGROUND**

The pro se Plaintiff, a federal pretrial detainee who is being held at the Transylvania County Jail, filed this civil rights action pursuant to 42 U.S.C. § 1983 addressing incidents surrounding his May 30, 2023 arrest, and events that are alleged to have subsequently occurred at the Buncombe County Detention Facility ("BCDF").[2] [Doc. 1 at 5]. In the Complaint,[3] the Plaintiff names as Defendants in their individual capacities the following Asheville Police Department ("APD") officers: FNU Hayes, FNU Baker, FNU Cramer, FNU Smith, FNU

---

[1] Transylvania County Detention Center records indicate that the Plaintiff's name is Valachie Wendell Hendon. [See Doc. 4]; https://www.ncinmatesearch.org/Transylvania_County.html (last accessed Oct. 16, 2024); Fed. R. Ev. 201.

[2] The Plaintiff was charged in this Court, Case No. 1:24-cr-18-MOC-WCM-1, with 10 drug trafficking and firearm offenses, i.e., distributing controlled substances on April 28 and May 10, 18, 23, and 30, 2023; possession of a firearm by a convicted felon on May 18, 23, and 30, 2023; and possession of a firearm during and in relation to a drug trafficking crime on May 23 and 30, 2023. See Fed. R. Ev. 201. He also has pending charges in Buncombe County district and superior courts for, *inter alia*, firearm and drug offenses that are alleged to have occurred on May 30, 2023, Case Nos. 23CRS320722, 23CR320735, 23CR320739. A misdemeanor charge for resisting a public officer on May 30, 2023 was voluntarily dismissed, Case No. 23CR320151.

[3] The Plaintiff refers to a "flash drive I'm including with this Complaint," however, the Court has received no such item. [Doc. 1 at 7].

Hendricks, and FNU Hanley.[4] He also names as Defendants: Quentin Miller, the Buncombe County Sheriff; FNU Littrell, a BCDF captain; and FNU Luu, a BCDF sergeant. He asserts claims for "excessive force 4th Amendment," "false/unlawful arrest 4th Amendment," "illegal search & seizure 4th Amendment," "14th Amendment … unlawful detainment/ false imprisonment/ malicious prosecution," "Due Process violations," "malicious prosecution; interagency collusion/ civil conspiracy; violate due process to obtain unfair tactical advantage," and "failure to train."[5] [Id. at 2-4]. For injury, he states:

> I have become homeless in the time I've have been detained due to these violations of my civil liberties. I missed myriad lucrative opportunities which would have grown the handy-man service I had begun substantially. I was on the verge of joining my company with several larger companies through a serious of very profitable business contacts, those opportunities have since evaporated so I will not enjoy the fruits of all my labor. I have not been able to provide the necessities required for my childrens stability. I have a newborn daughter that I have never been able to hold or meet properly. There have been several family members of mine that have died and which I couldn't say goodbye to, bury properly, or grieve for yet.
>
> Since being falsely imprisoned I have had to sell my tools which were my livelihood, most of which my father passed down to me and were irreplaceable. I have been a musician, mainly a guitarist for more than 30 years, now my left hand doesn't function properly. I have lost range of motion and suffered nerve damage from the excessive force and cruel, brutal, and unnecessary tightness of the handcuffs the officers put on me for an unreasonable amount of time. I have been stripped of everything; not only all of my worldly material possessions but I was also stripped of many previous moments and memories I will never have now, like first steps and farewells to dying loved ones. Those things have caused me many mental & emotional distresses and traumas. The deprivation of my due process & procedural due process rights allowed me to be unlawfully denied my liberty and freedoms which are protected & guaranteed by the safeguards put in place by the 14th amendment of the U.S. constitution. There have been many injuries sustained by the violations claimed in this complaint of which relief should be granted the ones listed are but a few.

---

[4] Also referred to as "Officer Hangley." [Doc. 1 at 3].

[5] The Court will discuss the claims that are reasonably suggested by the allegations, regardless of the titles that the Plaintiff has applied. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

[Id. at 8-9] (errors uncorrected). The Plaintiff seeks the dismissal of his pending criminal charges and $3.8 million in damages. [Id. at 9].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see 28 U.S.C. § 1915A (requiring frivolity review for prisoners' civil actions seeking redress from governmental entities, officers, or employees).

In its frivolity review, a court must determine whether a complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166 (2023).

   1. **Preliminary Matters**

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a) of the Federal Rules of Civil Procedure. [See, e.g., Doc. 1 at 7 (referring to "Officer Hicks," and "Buncombe County Detention"[6])]; Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties[.]"); Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("[T]o make someone a party the plaintiff must specify him in the caption and arrange for service of process."); Perez v. Humphries, No. 3:18-cv-107-GCM, 2018 WL 4705560, at *1 (W.D.N.C. Oct. 1, 2018) ("A plaintiff's failure to name a defendant in the caption of a Complaint renders any action against the purported defendant a legal nullity."). The allegations directed at individuals not named as defendants are dismissed without prejudice.

Some of the Plaintiff's allegations are too vague and conclusory to attribute to any Defendant, or are so confusing that the Court cannot discern the intended claim.[7] See Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"); Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient); Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim). These claims are dismissed without prejudice.

2. **Traffic Stop**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons,

---

[6] Even if the Plaintiff had named "Buncombe County Detention" as a defendant, the claims against that entity could not proceed because a detention facility is not a "person" for purposes of § 1983. Brooks v. Pembroke Jail, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989) (a jail is not a "person" subject to suit under § 1983).

[7] [See, e.g., Doc. 1 at 7 (alleging that Defendant Luu and Officer Hicks "coerced me to go to the back knowing all to well that was moving backwards procedurally….;" "Captain Littral stated that Officer Luu from BCDF that moved me further in the jail on the BWC that 'Officer Luu was within policy;" and "The officer ask me to get out the car before my hands where an issue I ask the driver for her phone only then he tells me to get out this officer did not know me they gave him my money and the driver said a black neighborhood & ran over to see if he could recognize me soon as she said Phsgh Viwe it became all about selling dope when he didn't even know me systematic racism") (errors uncorrected)].

4

houses, papers, and effects, against unreasonable searches and seizures…." U.S. Const. amend. IV. A traffic stop constitutes a "seizure" under the Fourth Amendment that must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity. Whren v. United States, 517 U.S. 806, 810 (1996); United States v. Williams, 808 F.3d 238, 245 (4th Cir. 2015). To determine a traffic stop's reasonableness, the courts apply the standard set forth in Terry v. Ohio, 392 U.S. 1 (1968), which asks whether (1) the stop is legitimate at its inception and (2) the officer's actions during the stop are reasonably related in scope to the basis for the stop. United States v. Perez, 30 F.4th 369, 374-75 (4th Cir. 2022); United States v. Bowman, 884 F.3d 200, 209 (4th Cir. 2018). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren, 517 U.S. at 810. A traffic stop's "mission" determines how long an officer may tolerably detain the subject under investigation. United States v. Perry, 92 F.4th 500, 510 (4th Cir. 2024); Rodriguez v. United States, 575 U.S. 348, 355 (2015). Police may not extend a traffic stop beyond the scope of its initial mission without either the driver's consent of a reasonable suspicion that illegal activity is afoot. Perry, 92 F.4th at 510.

Officers conducting a Terry stop may take steps that are "reasonably necessary to maintain the status quo and to protect their safety, including the drawing of their weapons." United States v. Sinclair, 983 F.2d 598, 602 (4th Cir. 1993) (citing United States v. Hensley, 469 U.S. 221, 235 (1985));  see United States v. Taylor, 857 F.2d 210, 213-14 (4th Cir. 1988) ("Although … approaching a suspect with drawn weapons [is an] extraordinary measure[], such police procedures have been justified in this circuit as a reasonable means of neutralizing potential dangers to police and innocent bystanders"). An officer making a traffic stop may also order passengers to get out of the car pending the completion of the stop. Arizona v. Johnson,

5

555 U.S. 323, 331-32 (2009) (quoting Maryland v. Wilson, 519 U.S. 408, 415 (1997)).

The Plaintiff contends that Defendant Hayes violated the Fourth Amendment by stopping a vehicle in which the Plaintiff was a backseat passenger. He alleges that the stop was pretextual where Hayes said during the stop that it was for "tag lights" whereas Hayes told his superior officer that he "ran the car and it came back RO and was 110 so whoever was in the car couldn't be abiding the law…."[8] [Doc. 1 at 2]. The Plaintiff alleges that the following then transpired:

> Officer Hayes approaches the car with his weapon drawn until he can see there is no threat. He gets unreasonably close to me and reaches to grab me while simultaneously asking me to get out of the car. I redrew my hands and asked why he was even talking to me and not the driver. Now the situation has escalated because of the officers actions. He calls me a maniac and I tell him to get out of my face, the driver keeps trying to go for my hands and the officer is making an issue out of it. I'm trying to keep my hands in view and then other officers arrive….

[Id. at 3] (errors uncorrected).

The Plaintiff has failed to state a plausible Fourth Amendment claim with regards to the traffic stop. A defective tag light was adequate to justify the traffic stop. See United States v. Lewis, 466 F. App'x 170, 172 (4th Cir. 2012) (an initial stop based on N.C. Gen. Stat. § 29-129(d) (2011) was lawful). Defendant Hayes' added suspicion of a "110" issue does not undermine the stop's validity. Whren, 517 U.S. at 813 (any subjective ulterior motive that a police officer may have for making a traffic stop does not make otherwise lawful conduct illegal or unconstitutional); Ohio v. Robinette, 519 U.S. 33, 39 (1996) (noting that Fourth Amendment reasonableness is evaluated objectively). That Hayes ultimately did not issue a traffic citation or a formal warning for the tag light does not alter this outcome. See, e.g., Perry, 92 F.4th at 511 (initial detention was not unlawfully extended where information including the defendant's furtive movements heightened officers' suspicion and led them to request consent to search the

---

[8] The Plaintiff does not define "RO" or "110."

6

Case 1:24-cv-00173-GCM    Document 7    Filed 11/15/24    Page 6 of 16

vehicle); United States v. Sparks, 37 F.App'x 826 (8th Cir. 2002) (although an officer had decided not to issue a ticket for a license violation, he "was not required to turn a blind eye to new factors that present[ed] themselves in the process of the traffic stop"). During the vehicle stop, Defendant Hayes was constitutionally permitted to: approach the vehicle with a drawn weapon, Sinclair, 983 F.2d at 602; approach the Plaintiff's side of the vehicle and address questions to him, Johnson, 555 U.S. at 323; and order the Plaintiff to exit the vehicle, id. at 333-34.[9] The Plaintiff has, therefore, failed to state a plausible § 1983 claim with regards to the vehicle stop and these claims are dismissed without prejudice.

### 3. Excessive Force

A claim that a police officer employed excessive force during the course of an arrest, investigatory stop, or other seizure is analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989); Quinn v. Zerkle, 111 F.4th 281, 296 (4th Cir. 2024); Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Factors bearing on the reasonableness of a use of force include: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest. Graham, 490 U.S. at 396. The reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Id.

The Plaintiff alleges that: Defendant Hayes reached to grab him while simultaneously asking him to get out of the car; Defendants Hayes, Baker, Cramer, and Smith threw Plaintiff to the ground, pinned him with their knees on his head while Plaintiff "was clearly no threat … and no crime had been committed;" and the Plaintiff was transported to the hospital for head trauma

---

[9] Defendant Hayes' other alleged uses of force will be discussed separately.

and groin injuries. [Doc. 1 at 2-3].

Taking Plaintiff's allegations as true and giving Plaintiff the benefit of every reasonable inference, the Court finds that Plaintiff's excessive force claims against Defendants Baker, Cramer, Hayes, and Smith survive initial review in that they are not clearly frivolous.

### 4. False Arrest/ Imprisonment

Section 1983 provides a federal cause of action for Fourth Amendment false arrest. Wallace v. Kato, 549 U.S. 384 (2007). False arrest and false imprisonment overlap; the former is a species of the latter. Id. at 387-88. An arrest is a seizure under the Fourth Amendment, and such a seizure is reasonable only if based on probable cause. Wilson v. Kittoe, 337 F.3d 392, 398 (4th Cir. 2003). Probable cause to justify an arrest means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). Whether probable cause exists must be determined "in the light of all of the surrounding circumstances." Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998). To state a cognizable § 1983 claim for false arrest, a plaintiff must allege that law enforcement officers arrested him without probable cause. See Pleasants v. Town of Louisa, 524 F. App'x 891, 897 (4th Cir. 2013). Damages for a false arrest claim covers the time of the detention up until issuance of process or arraignment. Heck, 512 U.S. at 484. Further, the Fourth Amendment requires that any person who is arrested without a warrant be brought before a neutral magistrate within 48 hours, absent extraordinary circumstances. See Culley v. Marshall, 601 U.S. 377, 388 (2024); County of Riverside v. McLaughlin, 500 U.S. 44, 53, 56-57 (1991).

The Plaintiff appears to claim that: Defendant Hayes unlawfully arrested him because no

8

citation or warning was issued for the "tag lights" violation; he was falsely placed in custody when no crime had been committed; he was not immediately booked upon arriving at BCDF; he was held in a cell for 12 hours without bond; he had to wait 4 ½ hours in the cell before Luu took him to see a magistrate; he was initially given an A-100 arrest warrant form that had no court date or bond information and was "void of any other information;" and he received an AOC-200 form that included a court date and bond information 13 hours later. [Doc. 1 at 2-4, 7]. He seeks the dismissal of his pending state charges. [Id. at 9].

The Plaintiff complains that he was falsely arrested and imprisoned, however, he is a pretrial detainee on numerous state charges including for incidents that are alleged to have occurred on the date at issue. In Younger v. Harris, the Supreme Court held that a federal court should not interfere with state criminal proceedings except in the most narrow and extraordinary of circumstances. 401 U.S. 37, 43-44 (1971). Under Younger, abstention is proper in federal court when (1) there is an ongoing state court proceeding; (2) the proceeding implicates important state interests; and (3) the plaintiff has an adequate opportunity to present the federal claims in the state proceeding. Emp'rs Res. Mgmt. Co. v. Shannon, 65 F.3d 1126, 1134 (4th Cir. 1995). All of these criteria have been met and, as such, the Court will abstain from interfering with Plaintiff's ongoing state criminal proceedings.[10]

The Plaintiff also cannot use this civil rights action to obtain the dismissal of his pending federal criminal charges. See generally Wilkinson v. Dotson, 544 U.S. 74, 78 (2005) (finding a prisoner "cannot use a § 1983 action to challenge the fact or duration of his confinement" (quotation marks and citations omitted)); 28 U.S.C. § 2255; see, e.g., DeCorey v. Noem, 2022

---

[10] The Plaintiff previously filed a § 1983 suit in this Court against two BCDF officers and a Buncombe County Legal Risk Department attorney in which he asserted claims for false arrest and false imprisonment. See Hendon v. Redmond, 2024 WL 3643756 (W.D.N.C. July 31, 2024) (alleging that the defendants withheld flash drives containing evidence). The Court dismissed that action based on abstention principles and for failure to state a claim.

9

WL 9495665 (E.D.N.C. Oct. 14, 2022).

The Plaintiff's claims for false arrest and false imprisonment and his request to dismiss his pending criminal charges are, therefore, dismissed.

### 5. Malicious Prosecution

A malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort. Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000). To state a malicious prosecution claim, a plaintiff must allege that the defendant caused a seizure of the plaintiff pursuant to legal process, unsupported by probable cause, and the criminal proceedings terminated in plaintiffs' favor. Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012). To demonstrate a favorable termination of a criminal prosecution for purposes of a malicious prosecution claim, a plaintiff need only show that his prosecution ended without a conviction. Thompson v. Clark, 596 U.S. 36, 39 (2022).

The Plaintiff contends that Defendants Hendricks, Hanley, Hayes, and Luu maliciously prosecuted him. [Doc. 1 at 3-4]. These claims are unsupported by factual allegations and they are, therefore, too vague and conclusory to state a plausible § 1983 claim. See Fed. R. Civ. P. 8(a)(2); Simpson, 900 F.2d at 35; Dickson, 309 F. 3d at 201-02. Moreover, the Plaintiff still has pending state and federal criminal charges with regards to the incidents at issue and he cannot satisfy the favorable termination requirement at this time. Accordingly, the Plaintiff's malicious prosecution claims are dismissed without prejudice.

### 6. Conditions of Confinement

"[A] pretrial detainee has a right under the Due Process Clause to be free from punishment before his guilt is adjudicated." Tate v. Parks, 791 Fed. App'x 387, 390 (4th Cir.

2019) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). To state a Fourteenth Amendment claim based on unconstitutional conditions of confinement, a pretrial detainee must allege facts sufficient to show that the action taken was not "'rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 399 (2015)). In other words, a pretrial detainee must only show that "the defendant's action or inaction was … objectively unreasonable" in that the defendant acted or failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)).

The Plaintiff appears to contend that his procedural due process rights were violated because: upon arriving at the BCDF, Defendant Haney confiscated Plaintiff's money, cursed at him, and tried to provoke him verbally while Plaintiff was being searched; Plaintiff was taken to the "back" of the BCDF; Defendants Hanley, Haney, and Luu placed him in a single "solitary confinement" cell where he was held "incommunicado" for 12 hours; officers searched a home where Plaintiff did not live while Plaintiff was being held; and the Plaintiff felt as though he had been kidnapped and was in bondage. [Doc. 1 at 2-7].

The Plaintiff has failed to plausibly allege that his detention in a single cell for a matter of hours was objectively unreasonable or excessive in relation to the purpose of holding him pending law enforcement's continued investigation. See generally Maryland v. King, 569 U.S. 435, 449 (2013) (completing an arrest includes taking necessary administrative steps incident to arrest – such as booking the arrestee at the jail); Bell, 441 U.S. at 539 n.21 (defining "punishment" in terms of intent but noting that there is "a *de minimis* level of imposition with which the Constitution is not concerned") (quoting Ingraham v. Wright, 430 U.S. 651, 674

(1977)); Dilworth v. Adams, 841 F.3d 246, 252 (4th Cir. 2016) (noting that Bell excluded from "punishment" *de minimis* levels of imposition; finding that a pretrial detainee's disciplinary segregation for *85 days* during which time he was confined to his cell for 23 hours per day and was denied all personal contact except with attorneys and clergy, implicated due process); Robles v. Prince George's Cnty, Md., 302 F.2d 262 , 269 (4th Cir. 2002) (finding pretrial detainee must show that official action was not "de minimis" to invoke due process protections).

Insofar as the Plaintiff's complains that Defendant Haney seized his money, this fails to state a due process claim because the Plaintiff has an adequate post-deprivation remedy in state tort law. See Hudson v. Palmer, 468 U.S. 517, 533 (1984) (stating that intentional deprivations of property do not violate the Due Process Clause if a meaningful post-deprivation remedy for the loss is available); Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) ("Under North Carolina law, an action for conversion will lie against a public official who by an unauthorized act wrongfully deprives an owner of his property").

**7. Conspiracy**

To establish a civil conspiracy under § 1983, a plaintiff must show that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996); see Hafner v. Brown, 983 F.2d 570, 576 n. 6 (4th Cir. 1992). An essential element in any conspiracy to deprive the plaintiff of his constitutional rights is an agreement to do so among the alleged co-conspirators. Ballinger v. North Carolina Ag. Extension Serv., 815 F.2d 1001 (4th Cir. 1987) (1985 case). Without such a meeting of the minds, the independent acts of two or more wrongdoers does not amount to a conspiracy. Murdaugh Volkswagen v. First Nat'l Bank, 639 F.2d 1073 (4th Cir. 1981). Where the complaint

12

makes only conclusory allegations of a conspiracy under § 1983 and fails to demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint. See Woodrum v. Woodward County Okl., 866 F.2d 1121 (9th Cir. 1989); Cole v. Gray, 638 F.2d 804 (5th Cir. 1981). General allegations that defendants entered into an agreement, without sufficiently alleging plausible grounds to infer such an agreement, fail to state a § 1983 conspiracy claim. Wiggins v. 11 Kew Garden Court, 497 F. App'x 262 (4th Cir. 2012).

The Plaintiff contends that Defendants Hendricks, Hanley, Hayes, and Luu colluded to illegally detain him incommunicado, deprive of his liberty and procedural due process rights, and to participate in a malicious conspiracy and prosecution. [Doc. 1 at 4]. The Plaintiff's vague and conclusory allegations of collusion and conspiracy fail to plausibly state a § 1983 claim. See Fed. R. Civ. P. 8(a)(2); Simpson, 900 F.2d at 35; Dickson, 309 F. 3d at 201-02; Wiggins, 497 F. App'x at 262. Accordingly, the Plaintiff's conspiracy claims are dismissed without prejudice.

### 8. Municipal and Supervisory Liability

A supervisor may be liable for his or her subordinates' conduct under § 1983 where: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge as so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994); Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978). Supervisory liability cannot be based on a *respondeat superior* theory. See Monell, 436 U.S. at 691.

Nor can municipal liability be based on *respondeat superior*. Id.; Burgess v. Goldstein, 997 F.3d 541, 562 (4th Cir. 2021). Municipal liability arises only when the offensive acts are taken in furtherance of municipal policy or custom. See City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989) (a municipality can be liable under § 1983 only where its policies are the "moving force" behind the constitutional violation) (quoting Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981)). To state such a claim, the plaintiff must plausibly allege a constitutional harm that stems from the acts of a municipal employee "taken in furtherance of some municipal 'policy or custom.'" Milligan v. City of Newport News, 743 F.2d 227, 229 (4th Cir. 1984) (quoting Monell, 436 U.S. at 694); see also Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987). A plaintiff can establish the requisite "policy" for Monell liability through a failure to train, if it "reflects a 'deliberate' or 'conscious' choice" to not do so. City of Canton, 489 U.S. at 389.

The Plaintiff claims that: Sheriff Miller is "the policy maker;" Captain Littrel said that Defendant Luu acted "within policy" by moving the Plaintiff "further in the jail…;" and that this policy "was the moving force behind the deprivation of [Plaintiff's] constitutional right 14th Amendment due process of law…;" and "Littrell of BCDF failure to train I've was only issued a AOC form officers should have known I could not go to court without first being booked and processed." [Doc. 1 at 4, 7] (errors uncorrected).

These allegations are too vague, conclusory, and nonsensical to state a § 1983 claim. See Fed. R. Civ. P. 8(a)(2); Simpson, 900 F.2d at 35; Dickson, 309 F. 3d at 201-02. Further, no § 1983 claim has passed initial review with regards to the incidents that allegedly occurred at the BCDF. The Plaintiff's supervisory and municipal liability claims based on those incidents, therefore, necessarily fail. See Waybright v. Frederick Cnty., Md., 528 F.3d 199, 203 (4th Cir.

2008) ("supervisors and municipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer,' at least in suits for damages.") (quoting City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)). Accordingly, the Plaintiff's claims based on supervisory and municipal liability are dismissed without prejudice.

## IV. CONCLUSION

In sum, Plaintiff's Complaint passes initial review for the use of excessive force against Defendants Hayes, Baker, Cramer, and Smith, and the remaining claims are dismissed without prejudice.

### ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Plaintiff's Complaint [Doc. 1] passes initial review against Defendants Hayes, Baker, Cramer, and Smith for the use of excessive force.

2. The remaining claims are **DISMISSED WITHOUT PREJUDICE**.

3. The Clerk is respectfully instructed to mail four blank summons forms to the Plaintiff, which the Plaintiff shall fill out and return for service of process on Defendants Hayes, Baker, Cramer, and Smith. Once the Court receives the completed summonses from Plaintiff, the Clerk shall direct the U.S. Marshal to effectuate service upon these Defendants.

The Clerk is respectfully instructed to note in the Court's record that the Plaintiff is also known as "Valachie Wendell Hendon."

**IT IS SO ORDERED.**

Signed: November 15, 2024

Graham C. Mullen
United States District Judge