UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:24-cv-173-GCM

| VALCHIC WENDELL HENDON, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | **ORDER** |
|  | ) |  |
| CHASE HAYES, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**THIS MATTER** is before the Court on Defendants Chase Hayes and Evan Smith's Motion to Dismiss [Doc. 23].[1]

I.     PROCEDURAL BACKGROUND

The pro se Plaintiff filed the unverified Complaint pursuant to 42 U.S.C. § 1983 addressing the circumstances of his May 30, 2023 arrest in Buncombe County.[2] [Doc. 1]. The unverified Amended Complaint passed initial review against Asheville Police Department ("APD") Officers Hayes and Smith for the use of excessive force, and the remaining claims were dismissed without prejudice.[3] [Docs. 13, 21].

Defendants Hayes and Smith were served and filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 23]. In support of their Motion, the Defendants submitted a memorandum, and materials including video footage from both

---

[1] The Clerk will be instructed to update the record with the Defendants' full names.

[2] The Plaintiff's present address of record is at the Swain County Jail.

[3] The Amended Complaint also passed initial review against Defendants Baker and Cramer, however, the action was dismissed as to them for lack of prosecution. [Doc. 33].

Defendant's body worn cameras ("BWC"), and the Declaration of Jimmy Wingo attesting to the authenticity of the BWC video footage. [Doc. 23]. On May 27, 2025, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Doc. 24]. The Court advised the Plaintiff that it may treat Defendants' Motion to Dismiss as a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure because the Motion is supported by materials other than the pleadings. [Id.]. The Court further advised Plaintiff of the requirements for filing a response to a summary judgment motion and of the manner in which evidence may be submitted to the Court. [Id.]. Finally, the Court advised Plaintiff that he may seek to conduct discovery under Rule 56(d) if necessary to present evidence in opposition to the Defendants' Motion. [Id.].

The Plaintiff sought the production of video footage to oppose the Defendants' Motion, however, this was denied as moot because the Plaintiff already appeared to be in possession of the footage and, in any event, the Defendants had provided him with another copy of the footage with their Motion. [Doc. 31]. The Court did, however, grant Plaintiff additional time in which to file a response in an Order entered on June 30, 2025.[4] [Id.]. The Plaintiff has not responded to the Defendants' Motion and the time to do so has expired. This matter is now ripe for disposition.

II.     **STANDARD OF REVIEW**

The Fourth Circuit "has cautioned that district courts should not consider summary judgment motions where the nonmoving party has not had an opportunity to discover information essential to its opposition." Farabee v. Gardella, 131 F.4th 185, 192-93 (4th Cir. 2025) (citing Shaw v. Foreman, 59 F.4th 121, 128-29 (4th Cir. 2023)). Here, the Plaintiff has been provided

---

[4] The Plaintiff filed a Notice of Change of Address dated July 9, 2023, which was docketed on July 18, 2025. [Doc. 32]. On August 5, 2025, the Court mailed the Plaintiff another copy of the June 30 Order at his new address, in an abundance of caution.

with the video footage at issue and he has not challenged the authenticity of the same, and there is no "potential need for discovery" of which this Court is aware. Farabee, 131 F.4th at 196 (citing Pledger v. Lynch, 5 F.4th 511, 526 (4th Cir. 2021)). The Defendants' Motion to Dismiss will, therefore, be treated as a Motion for Summary Judgment.[5]

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other

---

[5] The Court could also consider the video footage under Rule 12(b)(6). See Doriety for Est. of Crenshaw v. Sletten, 109 F.4th 670, 679-80 (4th Cir. 2024) ("a district court can consider a video submitted at the motion to dismiss stage when (1) the video is 'integral' to the complaint and its authenticity is not challenged, but (2) only to the extent that the video 'clearly depicts a set of facts contrary to those alleged in the complaint,' or 'blatantly contradicts' the plaintiff's allegations, rendering the plaintiff's allegations implausible.") (citation omitted).

3

materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380. To be sure, "at the summary judgment stage, video evidence can only discredit a nonmovant's factual assertions if the video 'blatantly' contradicts the nonmovant's position." Simmons v. Whitaker, 106 F.4th 379, 385 (4th Cir. 2024) (citing Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008)).

4

## III. FACTUAL BACKGROUND

The forecast of evidence, taken in the light most favorable to the Plaintiff as the non-moving party, shows the following.[6]

At approximately 2:21 AM on May 30, 2023, Officer Hayes conducted a traffic stop of the vehicle in which Plaintiff was the rear seat passenger. [Hayes BWC at 2:21:28]. The vehicles stopped at a gas station and the Plaintiff immediately opened the rear driver-side door; Hayes ordered the Plaintiff, repeatedly, to close the car door. [Id. at 2:21:32]. The Plaintiff asked "why?" and failed to comply. [Id. at 2:21:41]. Hayes explained that the vehicle did not have any tag lights, and that he would approach and discuss the matter with Plaintiff, however, the Plaintiff continued to refuse to close the car door despite at least six orders to do so. [Id. at 2:22:11].

Hayes exited his vehicle and approached the Plaintiff with his weapon in one hand and a flashlight in the other. [Id. at 2:22:21]. Hayes arrived at the open car door and shined his flashlight into the vehicle. Plaintiff said "man, what the [expletive] is you doing?" and Hayes replied that he was trying to figure out why Plaintiff had his door open. [Id. at 2:22:34]. Hayes then ordered the Plaintiff to step out of the car at least 12 times, and the Plaintiff did not comply. [Id. at 2:22:42]. Hayes reached towards the Plaintiff, who gestured angrily and yelled that Hayes had "better get the [expletive] out of [Plaintiff's] face," and had "better not touch [him]," as additional officers responded to the scene [Id. at 2:22:57, 2:23:04, 2:23:29]. Hayes also repeatedly told the Plaintiff to "stop hiding [his] hands," which were not constantly visible. [Id. at 2:23:46]. Officer Smith parked at the gas station and ran up to the car while Plaintiff was still inside the vehicle's back

---

[6] The forecast of evidence consists entirely of the Defendants' video footage. Even if the Plaintiff had submitted his Amended Complaint under penalty of perjury or otherwise responded to the Defendants' Motion with sworn testimony, his allegations are blatantly contradicted by the video evidence and would be disregarded in any event. See Scott, 550 U.S. at 380; Simmons, 106 F.4th at 385; Doriety, 109 F.4th at 679-80.

seat, arguing with Hayes. [Smith BWC at 2:23:46]. Hayes warned the Plaintiff that "I'm about to get you out of this car." [Hayes BWC at 2:23:49].

Officers including Hayes and Smith pulled Plaintiff out of the vehicle and onto the paved ground. [Hayes, Smith BWCs at 2:24:13]. Hayes, Smith, and other officers attempted to apply handcuffs, which the Plaintiff resisted by jerking his body and pulling a hand free. [Hayes BWC at 2:24:16]. Officers ordered Plaintiff to stop resisting and continued attempting to apply handcuffs. [Hayes, Smith BWCs at 2:24:22, 2:24:36]. During the struggle on the ground, an officer[7] crouching by the Plaintiff's head leaned forward, briefly blocking the view of Plaintiff's head with his leg. [Id. at 2:24:47]. The officer shifted away and Plaintiff's head came back into view three seconds later. [Id. at 2:24:50]. Officers secured the Plaintiff in handcuffs and rolled him onto his side so that he could breathe. [Id. at 2:25:06].

Plaintiff cursed, kicked at Smith, rolled onto his back, and continuously yelled at officers to *inter alia* "get [their] hand off of [him]…." [Smith BWC at 2:24:20]. Smith and other officers maintained Plaintiff on his side while Hayes spoke to the driver and searched the vehicle. [Id. at 2:25:28]. At approximately 2:27, officers lifted Plaintiff to a seated position on the pavement as he continued yelling, cursing, and resisting. [Id. at 2:27:49; 2:31:52; 2:33:48; 2:39:05; 2:39:24; 2:40:15]. At approximately 2:33, the Plaintiff complained that the officers were hurting him, saying "I told you, these cuffs are too [expletive] tight." [Id. at 2:33:01].

EMS arrived and the Plaintiff asked to sit up to talk to the responders, which he was permitted to do. [Id. at 2:44:00]. Plaintiff explained that he had "resisted arrest" because there was no reason to arrest him, and because the officers were white. [Id. at 2:49:28; 2:59:35]. The Plaintiff's handcuffs are clearly visible during this exchange, including a gap between the bracelet

---

[7] This appears to be Cramer, who is no longer a defendant in this action.

and Plaintiff's wrist. [Id. at 2:59:22]. The Plaintiff was assisted to his feet and he was allowed to converse privately with an EMS responder a short distance from officers. [Id. at 2:51:29; 3:05:20]. The EMS responder announced that the Plaintiff was going to come with him. The EMS responder, Plaintiff, and an officer walked to an ambulance parked nearby, and the Plaintiff climbed inside. [Id. at 3:23:09; 3:23:30; 3:23:53]. The Plaintiff continued yelling in the back of the ambulance and he physically resisted when officers performed searched him so that he could be transported to the hospital. [Smith BWC at 3:26:38; Hayes BWC at 3:28:42]. Throughout this interaction, the Plaintiff had no visible injuries.

## IV. DISCUSSION

### 1. Excessive Force

A claim that a police officer employed excessive force during the course of an arrest, investigatory stop, or other seizure is analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989); Quinn v. Zerkle, 111 F.4th 281, 296 (4th Cir. 2024); Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "[P]olice officers are constitutionally permitted to use only that force which is reasonable under the circumstances." Hupp v. Cook, 931 F.3d 307, 321 (4th Cir. 2019). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396; see also Kingsley v. Hendrickson, 576 U.S. 389, 399 (2015) ("[A] court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer"); Saucier v. Katz, 533 U.S. 194, 207 (2001) ("Excessive force claims ... are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred"), *abrogated on other grounds by* Pearson v. Callahan, 555 U.S. 223 (2009).

Under Graham, courts consider the following factors: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. These factors are not "exclusive," and courts may identify other "objective circumstances potentially relevant to a determination of excessive force." Kingsley, 576 U.S. at 397. For example, the Court may consider "[t]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; [and] any effort made by the officer to temper or to limit the amount of force." Id. "Ultimately, [the court] must decide whether the totality of the circumstances justifie[d] a particular sort of ... seizure." Hupp, 931 F.3d at 322.

The Fourth Circuit recognizes a cause of action for bystander liability that is "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., 302 F.3d 188, 203 (4th Cir. 2002)). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall, 302 F.3d at 204.

The Plaintiff complains that: Hayes grabbed Plaintiff while simultaneously asking him to get out of the car, without justification; officers brought Plaintiff to his feet then "slammed" him to the ground; an officer put his knee to the back of Plaintiff's head, "us[ing] this position as leverage pushing [Plaintiff's] face into the pavement while pulling his arms up;" officers refused to loosen Plaintiff's handcuffs because he had fought officers putting them on; Plaintiff was held down on the pavement for more than 30 minutes despite Plaintiff's requests to be brought to his feet and for officers to stop touching him; and EMS took Plaintiff to the hospital where he received

8

treatment for head and groin trauma. [Id. at 5-6, 12].

From the forecast of evidence here, no reasonable jury could conclude that Defendants Hayes and Smith used excessive force on the Plaintiff or that they failed to protect the Plaintiff from harm. Rather, a reasonable jury could conclude that the Plaintiff refused numerous lawful orders and that the Defendants used the minimal necessary force to remove the Plaintiff from the vehicle, restrain him, and monitor him until he could be safely transported to the hospital. It was objectively reasonable for officers to pull Plaintiff out of his vehicle after he ignored repeated lawful requests to close his car door, keep both hands in view, and step out of the car, and became increasingly combative. See, e.g., Masterson v. Grant, 467 F.App'x 171 (4th Cir. 2012) (granting summary judgment for police officer where the plaintiff conceded that she resisted arrest during a traffic stop). The Plaintiff's contention that officers brought him to his feet then slammed him to the ground is blatantly contradicted by the video footage. See Simmons, 106 F.4th at 385. The footage also conclusively demonstrates that neither Hayes nor Smith ever placed a knee on the back of Plaintiff's head. The only officer whose leg came close to the Plaintiffs head is not presently a defendant in this case. Moreover, that officer's leg contacted Plaintiff's upper body, if at all, for no more than three seconds while the Plaintiff was actively resisting officers' attempts to handcuff him. Even if this use of force were excessive, which it was not, there is no forecast of evidence of any serious risk of harm to the Plaintiff or that Defendants Hayes and Smith failed to do right by him. See Short, 87 F.4th at 611. The Plaintiff's contention that the handcuffs were excessively tight is also contradicted by the video footage and, in any event, it was objectively reasonable for officers to securely restrain the combative Plaintiff with handcuffs until EMS arrived on the scene a short time later. See generally Brown v. Gilmore, 238 F.3d 362, 369 (4th Cir. 2002) ("handcuffing … rarely constitute[s] excessive force where the officers were justified

9

… in effecting the underlying arrest"); see, e.g., Johnston v. Hefner, 2025 WL 2417760 (W.D.N.C. July 16, 2025) (it was apparent from the BWC footage that the arrestee was handcuffed in a "normal, standard, way"). That the Plaintiff was restrained on the ground by officers who kept their hands on him, despite his preference to stand and not to be touched by officers, does not amount to excessive force. See, e.g., Dickerson v. Duncan, 2020 WL 86456, at *3 (W.D. Va. Jan. 7, 2020) ("merely physically touching an arrestee does not constitute excessive force"). The Court concludes that there is no genuine issue for trial and that this action is frivolous. The Court will, therefore, grant Defendants' motion for summary judgment and dismiss this action with prejudice.

### 2. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

As discussed supra, the Plaintiff has not presented a forecast of evidence that the Defendants violated his constitutional rights. As such, summary judgment for the Defendants would also be proper on this ground.

### V. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is treated as a Motion for Summary Judgment, the Motion is granted, and this action is dismissed with prejudice as frivolous.[8]

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion to Dismiss [Doc. 23] is construed as a Motion for Summary Judgment, it is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE AS FRIVOLOUS.**

The Clerk is respectfully instructed to replace "FNU Smith" with Evan Smith and "FNU Hayes" with Chase Hayes in the Court's record.

The Clerk is further instructed to enter a Clerk's Judgment and close this case.

**IT IS SO ORDERED.**

Signed: August 29, 2025

Graham C. Mullen
United States District Judge

---

[8] The Defendants' Motion to Dismiss the Amended Complaint also would have been granted pursuant to Rule 12(b)(6).